UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

YOUSRY RIZK,

        **Plaintiff,**

v.                                  **Case No: 6:18-cv-1414-PGB-GJK**

AKEBO PUGH, JOHNNY JEAN,
ANGEL ORTIZ, BIJU
VARGHESE, DENNIS M.
LEMMA and SEMINOLE
COUNTY, FLORIDA,

        **Defendants.**

                                    /

## <u>ORDER</u>

This cause comes before the Court on Defendants Akebo Pugh ("**Defendant Deputy Pugh**") and Biju Varghese's ("**Defendant Nurse Varghese**") Motion to Dismiss (Doc. 146 (the "**Motion**")) and Plaintiff Yousry Rizk's response thereto (Doc. 157). Upon consideration, the Motion is due to be denied.

## I.    BACKGROUND[1]

This case stems from a pretrial detainee's interaction with law enforcement and staff at the Seminole County Jail. (Doc. 127).  Plaintiff is a 73-year-old retired schoolteacher who stands at five-feet, five-inches tall and weighs approximately 165–170 pounds and who suffers from several chronic medical conditions,

---

[1]    This account of the facts comes from the Plaintiff's Third Amended Complaint. (Doc. 127). The Court accepts these factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

including kidney disease, hypertension, gout, gastritis, and gastroesophageal reflux disease. (*Id.* ¶¶ 20–22). Plaintiff also is a naturalized U.S. citizen of Egyptian origin and has difficulty communicating and understanding English. (*Id.* ¶ 20, 24).

On January 18, 2018, the then 69-year-old Plaintiff, who was already suffering from poor kidney function, was arrested for a misdemeanor altercation with the director of his homeowner's association. (*Id.* ¶¶ 25, 43). Plaintiff was transported to Seminole County Jail, a correctional facility for Defendant Seminole County, where he underwent a preliminary search for weapons and contraband as part of the intake booking procedure. (*Id.* ¶ 26). The Seminole County Jail is overseen and operated by Defendant Sheriff Dennis M. Lemma ("**Defendant Sheriff Lemma**"), the Sheriff of Seminole County. (*Id.* ¶ 17).

Plaintiff was then escorted by Defendant Deputies Akebo Pugh, Johnny Jean, and Angel Ortiz (collectively the "**Defendant Deputies**") into a separate room, which contained no camera surveillance, where he was instructed to change into the jail uniform.[2] (*Id.* ¶¶ 28–29). The Defendant Deputies ordered the Plaintiff to remove his clothing and replace it with the jail uniform while they watched, without explaining why this was necessary. (*Id.* ¶¶ 29–30). Frustrated with the difficulty of understanding the Defendant Deputies' verbal instructions and the lack of privacy provided while he changed, Plaintiff removed his shirt and threw it to the floor. (*Id.* ¶¶ 32–33). In response, Defendant Deputy Pugh threw Plaintiff to

---

[2]   All Defendant Deputies are members of the Seminole County Sheriff's Office, which is an agency of Defendant Seminole County. (Doc. 127, ¶¶ 5–13).

the ground, restrained Plaintiff on the ground, wrapped his legs around Plaintiff, and choked Plaintiff. (*Id.* ¶¶ 34–35). Defendant Deputies Jean and Ortiz did not intervene during the interaction. (*Id.* ¶ 36). As a result of the force from Deputy Pugh's legs wrapped around him, Plaintiff's bladder discharged, and Plaintiff temporarily lost consciousness. (*Id.* ¶ 35). The interaction with Defendant Deputy Pugh lasted approximately five minutes. (*Id.* ¶ 37). After the interaction, Plaintiff was left on the floor, naked and calling out in pain, and Plaintiff heard laughter from outside the room in the hallway. (*Id.* ¶¶ 38–39).

Later, Plaintiff was seen by Defendant Nurse Varghese, an employee of Seminole County Sheriff's Office stationed at Seminole County Jail. (*Id.* ¶¶ 14–16, 41). Defendant Nurse Varghese was notified of the Deputies' use of force and its nature. (*Id.* ¶ 42). Plaintiff made multiple efforts to detail his resulting symptoms to Defendant Nurse Varghese and to give notice of his underlying medical conditions. (*Id.* ¶ 43). Additionally, Plaintiff asked to be seen by a physician. (*Id.*). Defendant Nurse Varghese refused Plaintiff's request to see a physician, stated that Plaintiff was not injured, and documented only that Plaintiff had a minor cut on his wrist. (*Id.* ¶ 44).

Plaintiff remained at the Seminole County Jail until he was able to post bond much later that night on January 19, 2018. (*Id.* ¶ 47). After the 16-hour confinement, Plaintiff contacted emergency services for transport to Orlando Health South Seminole Hospital. (*Id.* ¶ 48). Plaintiff there underwent diagnosis and treatment for his injuries and remained in the hospital for over three days. (*Id.*

¶ 60). As a result of his interaction with Defendant Deputy Pugh, medical diagnostics determined that Plaintiff sustained two broken ribs, tendon damage to his right arm, kidney and muscle cell damage, rhabdomyolysis, acute renal insufficiency, and hyperkalemia. (*Id.* ¶¶ 50–57). Plaintiff also suffers from physical, emotional, and psychological damage allegedly as a direct result of injuries sustained at the Seminole County Jail. (*Id.* ¶ 62).

Plaintiff now brings several state tort claims as well as constitutional claims under 42 U.S.C. § 1983 for his injuries in the Third Amended Complaint (*Id.* (the "**Third Amended Complaint**")). As is relevant here, Plaintiff alleges in Count I that Defendant Deputy Pugh violated Plaintiff's Fourteenth Amendment Due Process rights by using objectively unreasonable and excessive force against Plaintiff. (*Id.* ¶¶ 76–94 (the "**Excessive Force Claim**").[3] Additionally, Plaintiff alleges in Count IV that Defendant Deputy Pugh intended to inflict emotional distress upon Plaintiff in violation of Florida law. (*Id.* ¶¶ 111–15 (the "**IIED Claim**")). Plaintiff further alleges in Count II that Defendant Nurse Varghese demonstrated deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. (*Id.* ¶¶ 95–104 (the "**Deliberate Indifference Claim**")). Defendant Deputy Pugh now moves to dismiss the Excessive Force and IIED Claims, and Defendant Nurse Varghese moves to dismiss

---

[3]  Plaintiff acknowledges that his claim for excessive force properly lies under the Fourteenth Amendment, but, out of an abundance of caution, also alleges it in the alternative under the Fourth Amendment. (Doc. 127, p. 17 n.1). The parties now agree to litigate this cause of action under the Fourteenth Amendment. (Doc. 147, pp. 2–3).

the Deliberate Indifference Claim (Doc. 146). After Plaintiff's response in opposition (Doc. 157), this matter is ripe for review.

## II.    STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

The Court first addresses the sufficiency of the Excessive Force and IIED Claims against Defendant Deputy Pugh and subsequently reviews the Deliberate Indifference Claim against Defendant Nurse Varghese. Ultimately, all Claims at issue here survive the Motion.

### A.   The Excessive Force Claim[4]

A Fourteenth Amendment excessive force claim requires, first, that a law enforcement officer purposely or knowingly use force against a pretrial detainee and, second, that the application of force be done in a way that is objectively unreasonable, without regard to an officer's subjective intent to harm. *Watkins v. Pinnock*, 802 F. App'x 450, 461 (11th Cir. 2020) (citing *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019)).[5] Whether the use of force is objectively unreasonable is determined using the particular facts and circumstances of each case, and the court must make this determination based on the perspective of a reasonable officer on the scene, including what the officer knew at the time of incident, not with the court's benefit of hindsight. *Kingsley v. Hendrickson*, 576

---

[4]   As an initial matter, the Court agrees with Plaintiff that the proper scope of analysis for the Excessive Force Claim is the entire series of allegations, both preceding and following Defendant Deputy's alleged use of force, not just the narrow allegation regarding Defendant Deputy Pugh's order to Plaintiff to strip and change into a jail uniform *before the use of force*, as Defendant Deputy Pugh argues. (Doc. 146, pp. 7–8; Doc. 157, p. 8). The use of force itself, not the command to change clothing, is the heart of Plaintiff's allegations against the Defendant Deputies.

[5]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

U.S. 389, 396–97 (2015) (*citing Graham v. Connor*, 490 U.S. 386, 396 (1989)). Objective reasonableness can be determined by objective factors such as, but not limited to: 1) "the need to use force to preserve internal order and maintain institutional security;" 2) the relationship between the need for the use of force and the amount of force used; 3) the extent of the plaintiff's injury which resulted from the use of force; 4) "any effort made by the officer to temper or limit the amount of force used;" 5) "the severity of the security problem at issue" and "the threat reasonably perceived by the officer;" and 6) "whether the plaintiff was actively resisting." *Id.* Moreover, once the need for an application of force ceases, any continued application of a harmful force can be a violation of the Fourteenth Amendment. *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991); *see Piazza*, 923 F.3d at 953 (finding that a correctional officer's use of a second taser shock on a prisoner amounted to excessive force because the prisoner was immobilized, motionless, and had wet himself following an initial, permissible shock).

The initial element of a Fourteenth Amendment excessive force claim— whether the force was applied purposely or knowingly against a pretrial detainee— is easily satisfied as alleged here. It would be strange to suggest that Defendant Deputy Pugh accidentally executed a takedown of Plaintiff when Defendant Deputy Pugh allegedly also then got on top of Plaintiff and wrapped his legs around Plaintiff with enough force to cause bladder discharge and unconsciousness. (Doc. 127, ¶ 35).

Satisfaction of the last element—whether the force was objectively unreasonable—requires a more thorough review of the alleged circumstances. When the court applies the factors laid out in *Kingsley*, the Court finds that the Third Amended Complaint plausibly alleges that Defendant Deputy Pugh's response to Plaintiff throwing his shirt to the ground was objectively unreasonable. *Kingsley*, 576 U.S. at 397.

First, Plaintiff throwing his shirt to the ground in frustration may have created a need to use some force to preserve internal order or maintain institutional security, but there is no indication in the Third Amended Complaint that the Defendant Deputies made any other attempts to ensure compliance and to deescalate Plaintiff before Deputy Pugh's use of force. *Id.* There is nothing in the Third Amended Complaint indicating that Plaintiff posed a substantial risk of disrupting the institutional security of the Seminole County Jail; in fact, the alleged action, committed in a room with only Defendant Deputy Pugh, two other Defendant Deputies, and no other inmates, does not appear to pose much, if any, risk.

Second, even assuming some force was necessary, the relationship between the need for the use of force and the amount of force alleged in the Third Amended Complaint weighs in favor of Plaintiff. *Id.* Defendant Deputy Pugh used a much greater degree of force than was necessary to respond to Plaintiff's non-compliance, based on Plaintiff's allegations. If Plaintiff had continued to escalate and had the Defendant Deputies taken other less intrusive steps to defuse the

8

situation, then perhaps an increased level of force approximating that initially employed by Defendant Deputy Pugh may have been warranted. But at this procedural stage when the Court must interpret well-pled allegations in the light most favorable to Plaintiff, Defendant Deputy Pugh's response was disproportionate to the threat posed by Plaintiff's insubordination.

Third, the extent of Plaintiff's injuries alleged in the Third Amended Complaint indicates, at the very least, a plausibility of excessive force. *Id.* Plaintiff incurred serious injury, was hospitalized for at least three days, and alleges that he continues to suffer from injuries as a result of his interaction with Defendant Deputy Pugh. (Doc. 127, ¶ 35, 38, 40, 50–62). The severity of these injuries further underscore that Defendant Deputy Pugh's alleged actions likely went beyond what was necessary to reestablish control of the situation.

Fourth, the Third Amended Complaint does not provide any indication that Defendant Deputy Pugh attempted to limit the amount of force used against Plaintiff. *Id.*; (*Id.* ¶¶ 28–38). Plaintiff does not allege that he received any warning or that any less severe actions were taken prior to being thrown to the ground by Defendant Deputy Pugh. (*Id.*).

Fifth, while Plaintiff was acting in an escalated manner in response to directives provided by Defendant Deputy Pugh by throwing his shirt to the ground, the Court does not see how this act by itself created a severe disruption or a credible threat to the safety of the Defendant Deputies. This is particularly the case when considering Plaintiff's ripened age, small physical stature, and the fact that Plaintiff

had allegedly already been searched for weapons or contraband on a prior occasion. (*Id.* ¶¶ 21, 25, 27).

Sixth, while Plaintiff was to some degree resisting Defendant Deputy Pugh's commands by throwing his shirt to the ground, he did this in response to an order to *remove* his clothing, the purpose of which he allegedly did not understand as someone who struggles with English. *Id.* Consequently, on balance, the objective circumstantial factors here counsel a conclusion that Plaintiff has sufficiently alleged that Defendant Deputy Pugh's actions were objectively unreasonable. With both the elements of intent and objective unreasonableness plausibly established as alleged, Plaintiff's Excessive Force Claim may proceed.

Defendant Deputy Pugh argues that even if he plausibly violated Plaintiff's Fourteenth Amendment rights, the Excessive Force Claim against him must nevertheless be dismissed as he is entitled to qualified immunity. The Court disagrees. To overcome an officer's qualified immunity defense, a plaintiff must show "the law that governs the case is 'clearly established' at the time of the alleged violation." *Piazza*, 923 F.3d at 955. To qualify as "clearly established," the "legal principle must be 'settled' and 'clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). "The critical question is whether the law gave the officer 'fair warning' that his conduct was unconstitutional." *Id.* (quoting *Glasscox v. City of Argo*, 903 F.3d 1207, 1217–18 (11th Cir. 2018)).

> It was more than ten years ago [in 2019] that [the Eleventh Circuit] held, in no uncertain terms, that '[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."

*Id.* (quoting *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."), *overruled in part on other grounds*, *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)).  In other words, the law governing this case was clearly established in 2018 at the time of Plaintiff's allegations. The alleged five-minute duration of the incident, Plaintiff's loss of consciousness, and the discharge of Plaintiff's bladder leads the Court to plausibly infer that Plaintiff had clearly stopped resisting and the need for Defendant Deputy Pugh's use of force, if any, had abated after Plaintiff's initial immobilization. *Accord Piazza*, 923 F.3d at 956 (finding there was "'no meaningful distinction' between pepper spray to an unresisting detainee's face, a kick to his gut, or a taser to his chest and neck" in concluding that an officer violated clearly established law when he continued to apply force via a second taser shock to "an already-tased, incapacitated, incontinent, and unresisting detainee"). Therefore, Defendant Deputy Pugh had "fair warning" his conduct was unconstitutional, so he is not entitled to qualified immunity based on the allegations. The Motion is accordingly denied on this count.

## B.    The IIED Claim

To establish a claim for intentional infliction of emotional distress ("**IIED**") under Florida law, a plaintiff must prove four elements: "1) deliberate or reckless

infliction of emotional distress; 2) by outrageous conduct; 3) which conduct must have caused the suffering; and 4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (*citing Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985)). Plaintiff's allegations easily satisfy the first, third, and fourth elements of a claim for IIED. To begin, Defendant Deputy Pugh deliberately or recklessly inflicted emotional distress as alleged by intending to throw Plaintiff to the floor, restraining him, and leaving him crying on the floor while jail personnel laughed in the hallway. (Doc. 127, ¶ 112). This alleged conduct caused Plaintiff's suffering—that is, his unconsciousness, bladder discharge, and array of injuries. (*Id.* ¶ 35). Finally, this suffering was sufficiently severe as Plaintiff alleges he spent at least three days in the hospital for treatment and that some of Plaintiff's injuries continue to plague him. (*Id.* ¶¶ 49–62).

Despite the facial satisfaction of these initial three elements, Defendant Deputy Pugh argues that the allegations included in the Third Amended Complaint do not state an IIED claim because the alleged conduct does not meet the high standard required to satisfy the second "outrageous conduct" element. (Doc. 146, p. 9). The Court acknowledges that Florida courts only find conduct to be outrageous in "extremely rare circumstances." *R.W. v. Armor Corr. Health Servs., Inc.*, 830 F. Supp. 2d 1295, 1304 (M.D. Fla. 2011) (citing *McCarson*, 467 So. 2d at 278). Florida courts have explained that finding conduct to be "outrageous" is difficult because:

> It has not been enough that the defendant has acted with an
> intent which is tortious or even criminal, or that he has

> intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*McCarson*, 467 So. 2d at 278–79. Moreover, the subjective response of the plaintiff to the defendant's conduct does not control because courts must evaluate whether the alleged conduct rises to the level of "atrocious and utterly intolerable in a civilized community" from an objective perspective. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (*quoting McCarson*, 467 So. 2d at 278)). At the same time, when pleading a claim for IIED, a plaintiff need not allege defendant conduct that always and in every case exceeds all bounds of societal decency; rather, as always at the motion to dismiss stage, a plaintiff must allege conduct that plausibly rises to the level of extreme and outrageous. *C.P. by & through Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1097 (M.D. Fla. 2015). Importantly, the "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Dominguez v. Equitable Life Assur. Soc. of U.S.*, 438 So. 2d 58, 61–62 (Fla. 3d DCA 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (AM. L. INST. 1965)); *see also Tillman v. Orange Cnty., Fla.*, 519 F. App'x 632, 636–37 (11th Cir. 2013) (reversing

the dismissal of an IIED claim brought against law enforcement officers by a pretrial detainee alleging that law enforcement officers falsified charging documents to convict the pretrial detainee of a nonexistent crime and finding that the IIED claim should not be dismissed because the alleged officer conduct was outrageous under Florida law).

So too here. Defendant Deputy Pugh, one of the law enforcement officers in a position of power or authority over Plaintiff, allegedly abused that position of trust by forcibly and physically slamming the elderly pretrial detainee to the ground, stripping him manually, and squeezing him with enough force to cause a loss of consciousness, trigger discharge of Plaintiff's bladder, and inflict internal injuries severe enough for a three-day stay in the hospital. (Doc. 127, ¶¶ 28–39, 110–11). What is more, Defendant Deputy Pugh then left Plaintiff on the floor while fellow jail personnel laughed. (*Id.* ¶ 112). This show of force allegedly came in response to a geriatric pretrial detainee with limited English comprehension skills throwing his shirt to the floor after being told to change his uniform. (*Id.* ¶¶ 79–82). Defendant Deputy Pugh's alleged actions are particularly intolerable due to his position as a law enforcement officer entrusted with power and authority over the elderly Plaintiff. *Dominguez*, 438 So. 2d at 61–62.  In sum, Defendant Deputy Pugh's conduct is plausibly the type of intolerable conduct that could cause an average member of the community to exclaim, "Outrageous!" *McCarson*, 467 So. 2d at 279. Therefore, Plaintiff has adequately stated a claim for IIED at this procedural stage.

14

### C.       The Deliberate Indifference Claim

Defendant Nurse Varghese brings forward two main arguments in favor of dismissal. First, Defendant Nurse Varghese argues that he is entitled to qualified immunity and, second, that Plaintiff's Deliberate Indifference Claim fails as pled. (Doc. 146, p. 10). However, Defendant is not entitled to qualified immunity if Plaintiff's Deliberate Indifference Claim is viable, so the Court focuses its analysis on the sufficiency of Plaintiff's substantive claim.[6]

The treatment of pretrial detainees by prison officials is governed by the Due Process Clause of the Fourteenth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 520 (1979)). Pretrial detainees are entitled to receive, among other basic necessities, medical treatment for illness and injuries. *Id.* at 1574. When denied access to these necessities, a pretrial detainee may bring a Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 by alleging a prison official has displayed deliberate indifference to their serious medical needs. *Edwards v. Gilbert*, 867 F.2d 1271, 1274–75 (11th Cir. 1989). To prevail, such a pretrial detainee must allege that: (1) that they experienced an objectively serious medical need, (2) that a jail official

---

[6]   An officer's entitlement to qualified immunity turns on whether the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (2002) (establishing the doctrine of qualified immunity). But in the Eleventh Circuit, prison officials who are found to deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law, so a finding of deliberate indifference forecloses the prison official's entitlement to qualified immunity. *Hill v. Dekalb Reg'l Youth Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled on other grounds by*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002).

acted with subjective deliberate indifference to their serious medical need, and (3) that the deliberate indifference caused the plaintiff's injury. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007); *Patel v. Lanier, Cnty. Ga.*, 969 F.3d 1173 (11th Cir. 2020); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).[7]

> 1.   *Serious Medical Need*

To sufficiently allege the presence of an objectively serious medical need, a plaintiff must allege that the need is "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Courts have inferred that a medical need poses a substantial risk of serious harm if left unattended in at least three different scenarios.

First, a medical need poses a substantial risk of serious harm if it is "one that has been diagnosed by a physician as mandating treatment." *Mann,* 588 F.3d at 1307. Second, a medical need poses a substantial risk of serious harm if it is "so obvious that even a lay person would easily recognize the necessity" for further medical attention. *Mann,* 588 F.3d at 1307; *see also Howard v. Wilkinson*, 380 F. Supp. 3d 1263, 1279–80 (M.D. Fla. 2019) (finding that the severity of injury endured by a 75-year-old man who was slammed headfirst into hard ground by

---

[7] Several deliberate indifference cases cited *supra* are analyzed under the Eighth Amendment rather than the Fourteenth Amendment. However, the Eighth Amendment standard for an already convicted prisoner bringing a claim of deliberate indifference to a serious medical need against prison officials is identical to the Fourteenth Amendment standard for a pretrial detainee bringing a claim of deliberate indifference to a serious medical need against prison officials. *Mann*, 588 F.3d at 1306.

multiple corrections officers was "as foreseeable as nightfall").[8] Third, a medical need poses a substantial risk of serious harm if "a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307; *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994) (finding that the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for delay); *Brown v. Hughes*, 894 F.2d 1533, 1538–39 (11th Cir. 1990) (finding that a plaintiff's broken foot injury was made worse by defendant's failure to provide the plaintiff medical treatment even though the plaintiff was limping and asked for medical inspection when his foot began to swell).

Here, Plaintiff has pled allegations sufficient for the Court to infer that his medical needs were objectively serious. First, Plaintiff's needs were later diagnosed at a hospital, and while the Third Amended Complaint does not state whether the diagnosis specifically mandated treatment, the Court infers this is plausibly the case because Plaintiff also alleges he stayed at the hospital for over three days to receive treatment. *Mann,* 588 F.3d at 1307. Second, while Defendant Nurse Varghese argues that Plaintiff's allegations of broken ribs and blood disorders are not injuries that would outwardly indicate to a lay person that Plaintiff required treatment, Defendant Nurse Varghese was on notice regarding Plaintiff's other visible symptoms as well the nature of Defendant Deputy's use of force. (Doc. 146,

---

8   In *Howard*, the court found that the defendant who failed to report a patient's complaints that they could not sit up or move their legs had acted with deliberate indifference to that patient's serious medical needs because any common person would have recognized these reported symptoms required a doctor's attention. 380 F. Supp. 3d at 1285.

p. 13). Even a lay person would plausibly recognize the necessity of providing medical attention to a 69-year-old man who had recently been unconscious, incontinent, and subjected to the level and duration of force allegedly made known to Defendant Nurse Varghese. *Howard*, 380 F. Supp. 3d at 1279–80; (Doc. 127, ¶¶ 35, 42–43, 98). Third, a 16-hour delay in medical treatment for broken ribs, rhabdomyolysis, and acute renal insufficiency is plausibly past the tolerable length of delay in time for, at the very least, diagnostic screening of these injuries. *Harris*, 21 F.3d at 394. All told, the Court finds Plaintiff has plausibly alleged that his medical needs were serious as they posed a substantial risk of serious harm to him after. Therefore, Plaintiff has satisfied the objectively "serious medical need" element at this procedural stage.

### 2.   *Deliberate Indifference*

To find that a defendant acted with deliberate indifference to a plaintiff's serious medical needs, a plaintiff must show that a defendant 1) possessed subjective knowledge of a risk of serious harm, 2) yet disregarded that risk by conduct exceeding at least gross negligence. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005), *overruled on other grounds by*, *Kingsley v. Hendrickson*, 576 U.S. 389 (2015).

While the subjective knowledge of a defendant is not judged from the objective perspective of a reasonable officer, the determination of a defendant's subjective knowledge of a risk of serious harm is a question of fact that can be

18

inferred from the circumstances.[9] *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Here, given the allegations in the Third Amended Complaint, Defendant Nurse Varghese plausibly possessed subjective knowledge of the risk of serious harm posed to the Plaintiff. Plaintiff alleges the nature of the force was made known to Defendant Nurse Varghese and that he informed Defendant Nurse Varghese of his pre-existing medical conditions, the extent of his injuries, and the pain he felt as a result of his injuries. (*Id.* ¶¶ 41–44). Defendant Nurse Varghese argues that Plaintiff's allegations regarding subjective knowledge are conclusory, but in the end, these protestations amount to a factual assertion that Defendant Nurse Varghese did not actually possess subjective knowledge of Plaintiff's serious medical needs. (*See* Doc. 146, pp. 11–14). Plaintiff may face an uphill battle proving Defendant Nurse Varghese's subjective knowledge at later procedural stages, but, given that the Court must view well-pled allegations in the light most favorable to Plaintiff, Plaintiff's allegations of the circumstances as a whole permit the inference that Defendant Nurse Varghese plausibly possessed subjective knowledge that Plaintiff faced a serious risk of medical harm.

A defendant disregards a risk of serious harm when they are aware of facts pertaining to serious medical needs and fail to take measures to abate that risk by

---

[9] When making this determination, the Eleventh Circuit has held that a defendant can only be judged on the basis of what they knew at the time of incident, and a defendant cannot be held liable for failing to alleviate a significant risk that they should have perceived but did not. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). The Supreme Court in *Farmer* explained that while juries may permissibly infer subjective knowledge based on the circumstances, this inference is not required. 511 U.S. at 842–43.

conduct greater than gross negligence. *See Patel*, 969 F.3d at 1188 n.10 (11th Cir. 2020) (describing a tension in Eleventh Circuit case law regarding whether the mental state with respect to the deliberate indifference must exceed negligence or gross negligence); *Bozeman*, 422 F.3d at 1273 (finding that officers disregarded a risk of serious harm to a plaintiff by conduct exceeding gross negligence when they knew the plaintiff was unconscious and not breathing and yet failed for 14 minutes to check the plaintiff's condition, call for assistance, administer CPR, or do anything else to help). As Defendant Nurse Varghese allegedly rejected Plaintiff's request for a physician, made no serious attempt to assess his condition, and documented only a minor cut on the Plaintiff's wrist, while plausibly possessing subjective knowledge of the Plaintiff's pre-existing conditions, the Court further finds it plausible that Defendant Nurse Varghese consciously disregarded that risk of serious harm to Plaintiff by conduct exceeding gross negligence. (Doc. 127, ¶¶ 43–48, 60).

### 3.   *Causation*

To show causation between a defendant's deliberate indifference and a plaintiff's injury requires a determination as to whether the defendant was "in a position to take steps [to avoid further injury] . . . but, through [deliberate] indifference, failed to do so." *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 622–23 (11th Cir. 2007) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982)).

20

Here, Plaintiff alleges Defendant Nurse Varghese was a direct and proximate cause of Plaintiff's increased pain and suffering because he was in a position to diagnose Plaintiff and provide further treatment, yet he failed to do so, leading to a delay in that treatment. (Doc. 127, ¶¶ 41–45, 103). Moreover, Plaintiff alleges specific facts to allow the Court to plausibly infer a causal nexus between Defendant Nurse Varghese and Plaintiff's injuries by alleging that a 16-hour delay between seeing Defendant Nurse Varghese and Plaintiff's receipt of medical care lasting over three days. (*Id.* ¶¶ 43–48, 60). Therefore, Plaintiff has sufficiently alleged causation and plausibly stated his Deliberate Indifference Claim.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Deputy Pugh and Defendant Nurse Varghese's Motion to Dismiss (Doc. 146) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 18, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties